UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| FRANK A. ELDRED, | ) | No. CV-09-101-JPH |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING PLAINTIFF'S |
| v. | ) | MOTION FOR SUMMARY |
| | ) | JUDGMENT AND REMANDING FOR |
| MICHAEL J. ASTRUE, | ) | ADDITIONAL PROCEEDINGS |
| Commissioner of Social Security, | ) | PURSUANT TO SENTENCE FOUR 42 |
| | ) | U.S.C. § 405(g) |
| Defendant. | ) | |
| | ) | |
| | ) | |

BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 13, 15.)  Attorney Maureen J. Rosette  represents plaintiff; Special Assistant United States Attorney L. Jamala Edwards represents defendant.  The parties have consented to proceed before a magistrate judge.  (Ct. Rec. 8.) After reviewing the administrative record and briefs filed by the parties, the court **DENIES** defendant's Motion for Summary Judgment and **GRANTS** plaintiff's Motion for Summary Judgment and remands the matter to the Commissioner for additional proceedings.

## JURISDICTION

Plaintiff Fred A. Eldred (plaintiff) protectively filed for supplemental security income (SSI) on August 5, 2004.  (Tr. 98, 113.)  Plaintiff alleged an onset date of August 5, 2004. (Tr. 113.)  Benefits were denied initially and on reconsideration.  (Tr. 94, 90.)  Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Mary B. Reed on November 15, 2006.  (Tr. 524-70.)  Plaintiff was represented by counsel and testified at the hearing.  (Tr. 526-61.)  Vocational

expert K. Diane Kramer also testified. (Tr. 561-68.)  A second  hearing was held before ALJ R.J. Payne

on July 25, 2007. (Tr. 573-617.) Medical experts Dr. Arthur Craig and Dr. Ronald Klein testified. (Tr.

575-87.) Plaintiff also testified. (Tr. 588-615.) On August 17, 2007, the ALJ issued a written decision

denying  benefits.  (Tr. 384-93.)  The Appeals Council granted review and issued an order directing

remand to the ALJ for additional findings . (Tr. 408-09.) Upon remand, a third hearing was held  before

ALJ Payne on October 3, 2008. (Tr. 620-43.) Medical experts Dr. Steven Gerber and Dr. Margaret

Moore testified. (Tr. 622-35.) Plaintiff also testified for the third time. (Tr. 635-42.) On October 28,

2008, ALJ Payne issued a decision finding plaintiff was not disabled before  April 18, 2008, but he

became disabled on that date.  (Tr. 22-34.) The Appeals Council denied review (Tr. 8) and the matter

is now before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcripts, the ALJ decisions, and

the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff was 48 years old at the time of the first  hearing. (Tr. 526.) He left school in the tenth

grad but later obtained a GED.  (Tr. 527.)   Plaintiff last worked in 2002 and has previous work

experience as a cook, a street maintenance worker, and a chainsaw operator.  (Tr. 528-35, 563-64.)

Plaintiff testified that he has diabetes, foot pain, back pain, shoulder pain and headaches. (Tr. 535-41.)

Diabetes causes his blood sugar to be erratic, and stress increases his diabetes symptoms. (Tr. 592-93.)

He has severe swelling and pain in his foot every day, and has no feeling in parts of his foot. (Tr. 594-

95.)   His pain is constant as his ankle never quits hurting and he has severe headaches daily, although

the pain varies in intensity. (Tr. 607.) He does not sleep well due to racing thoughts and stress, and says

he is frequently depressed. (Tr. 542-43, 551, 600-01.) He testified he has to elevate his feet several times

per day, and that his ability to sit, stand and walk is limited. (Tr. 537, 541-42, 596, 638.)  He also

indicated that he quit driving due to pain in his shoulder and ankle.  (Tr. 640.)

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision.  42

U.S.C. § 405(g).  A Court must uphold the Commissioner's decision, made through an ALJ, when the

determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler,*

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -2

760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan,* 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze,* 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Services,* 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

**SEQUENTIAL PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education

and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -4

mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since August 5, 2004, the alleged onset date. (Tr. 24.) At step two, he found Plaintiff has the following severe impairments: diabetes mellitus, largely uncontrolled, with neuropathy in the lower extremities; mild degenerative disc disease of the spine; obesity; bilateral cataracts; history of left sided rotator cuff surgery; depression; anxiety; pain disorder with psychological factors and general medical condition; and personality disorder. (Tr. 25.) At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that met or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 29.) The ALJ then determined:

> [C]laimant has the residual functional capacity to perform a wide range of sedentary work as defined in 20 CFR 416.967(a). He can lift and carry 20 pounds occasionally and 10 pounds frequently. He can sit 4 hours at a time for a total of 6 hours in an 8-hour day. He can stand and/or walk for 1 hour at a time for a total of 2 hours in an 8-hour day. With the left hand, he can occasionally engage in reaching (including overhead) and push/pull. He can occasionally operate foot controls. He can occasionally climb stairs or ramps but should never climb ladders or scaffolds. He can occasionally balance, stoop, knee, crouch, or crawl. He should avoid exposure to unprotected heights, moving mechanical parts; or extreme cold or heat. He can occasionally be exposed to vibrations. He is capable of understanding, remembering, and carrying out simple instructions. He is moderately limited in social interaction with coworkers and supervisors.

(Tr. 30.) At step four, the ALJ found plaintiff is unable to perform any past relevant work. (Tr. 32.) After considering the plaintiff's age, education, work experience and residual functional capacity, the ALJ concluded that, before April 18, 2008, there were a significant number of jobs in the national economy that the claimant could have performed. (Tr. 32.) The ALJ then determined that since April 28, 2008, the day plaintiff turned 50, there are not a significant number of jobs in the national economy that the claimant could perform. (Tr. 33.) Thus, the ALJ concluded plaintiff was not disabled prior to April 18, 2008, but became disabled on that date and has continued to be disabled through the date of the decision. (Tr. 33.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -5

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, plaintiff asserts the ALJ erred in evaluating the medical and psychological opinions. (Ct. Rec. 14 at 11-20.) Defendant argues the ALJ properly considered the medical and testimonial record. (Ct. Rec. 16 at 5-11.)

**DISCUSSION**

Plaintiff challenges the ALJ's consideration of most of the medical and psychological opinion evidence. In evaluating medical or psychological evidence, a treating or examining physician's opinion is entitled to more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).

1.    **Psychological Opinions**

      **a. Dr. Bailey**

Plaintiff argues the ALJ improperly rejected the opinion of Dr. Bailey, an examining psychologist. (Ct. Rec. 14 at 5-16.) Dr. Bailey examined plaintiff and prepared a written report in October 2004. (Tr. 165-68.) Dr. Bailey diagnosed dementia, not otherwise specified, likely due to substance induced persisting dementia, although it may have had origins in diabetes. (Tr. 168.) Dr. Bailey assessed a GAF of 50 and noted, "Socially, he seems flat and usually confused. . . . he is able to do some simple tasks but his pace is very slow." (Tr. 168.) The ALJ rejected the diagnosis of dementia and the limitations assessed by Dr. Bailey for two reasons. (Tr. 31.)

First, the ALJ pointed out that the medical expert, Dr. Moore, indicated that Dr. Bailey did not take into account the possibility of malingering. (Tr. 31, 631.) When malingering is considered, the dementia diagnosis and observation that plaintiff's pace is limited are undermined. Plaintiff argues Dr. Moore's opinion does not constitute a specific, legitimate reasons for rejecting Dr. Bailey's opinion. (Ct. Rec. 14 at 15-16.) Plaintiff is correct that the opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Lester*, 81 F.3d at 831, citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990). However, the opinion of a non-examining physician may be accepted as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews*, 53 F.3d at 1043; *Lester*, 81 F.3d at 830-31. Cases have upheld the rejection of an examining or treating physician based on part on the testimony of a non-examining medical advisor; but those opinions have also included reasons to reject the opinions of examining and treating physicians that were independent of the non-examining doctor's opinion. *Lester*, 81 F.3d at 831, citing *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results). Thus, as plaintiff points out, case law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039.

As noted by defendant, there is substantial evidence independent of Dr. Moore's opinion justifying the ALJ's conclusion regarding Dr. Bailey's report. (Ct. Rec. 16 at 6-7.) In November 2006, Dr. Pollack, an examining psychologist, noted testing revealed an attempt to exaggerate problems and that plaintiff may not have been making his best effort. (Tr. 278.) Dr. Pollack also indicated testing revealed plaintiff was presenting himself in an unfavorable light. (Tr. 279.) In July 2008, another examining psychologist, Dr. Thompson, diagnosed rule-out malingering and indicated that several assessments suggested plaintiff was exaggerating or managing his presentation to appear

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -7

impaired.  (Tr. 476.)  Dr. Thompson also contradicted Dr. Bailey's assessed limitations, indicating that plaintiff was capable of understanding, remembering simple work-related instructions and would not have difficulty working with co-workers or supervisors unless he chose to have problems.  (Tr. 477.)  Objective test results and the opinions of Dr. Thompson and Dr. Pollack corroborate Dr. Moore's opinion regarding Dr. Bailey's report.  Therefore, the ALJ's rejection of Dr. Bailey's dementia diagnosis and assessed limitations was justified by substantial evidence.

A second reason mentioned by the ALJ in rejecting Dr. Bailey's opinion is that Dr. Rosen, who treated plaintiff briefly in 2006 and 2007, removed her initial dementia diagnosis after seven sessions with plaintiff.  (Tr. 31, 305, 307.)  Dr. Rosen's initial assessment included diagnoses of rule out dementia not otherwise specified, rule out major depressive disorder, and adjustment disorder. However, the ALJ apparently misread Dr. Rosen's narrative summary of psychotherapy treatment, which states that she "removed the R/O," or removed the qualifier of "rule out," from the dementia and major depressive disorder diagnoses.  (Tr. 307.)  Dr. Rosen did not withdraw the diagnosis of dementia; indeed, she opined that "he continued to present as most dysfunctional and overwhelmed by circumstances and demands . . . ." (Tr. 307.)  As such, the ALJ misinterpreted Dr. Rosen's dementia diagnosis and misapplied the opinion to the rejection of Dr. Bailey's report.  However, the error is harmless in this context because the ALJ cited a specific, legitimate reason supported by substantial evidence for rejecting Dr. Bailey's opinion.

**b. Dr. Pollack**

Plaintiff argues the ALJ gave an improper reason for rejecting the opinion of Dr. Pollack, an examining psychologist.  (Ct. Rec. 14 at 16-17.)  Dr. Pollack examined plaintiff in October and November 2006 and prepared a written report as well as a Mental Medical Source Statement.  (Tr. 273-83.)  Dr. Pollack assessed one moderate limitation in the ability to accept instructions and respond appropriately to criticism from supervisors, and two marked limitations in the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, and in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (Tr. 280-83.)  The ALJ rejected Dr. Pollack's assessment of marked

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -8

limitations for several reasons.  (Tr. 31-32.)

First, the ALJ noted that the assessment by Dr. Pollack was arranged by plaintiff's attorney "who uses this psychologist exclusively" and that Dr. Pollack "always" indicates certain moderate or marked limitations, "which of course historically supports disability per vocational expert analysis." (Tr. 31.)  This is not a legitimate reason for rejecting a medical  report.  An ALJ should not base his opinion of medical evidence on past activity not in the record.  *See Reed v. Massanari*, 270 F.3d 838, 843-44 (9th Cir. 2001) (finding it was improper for the ALJ to reject opinions of doctors based on past decisions that were not in the record); *see also Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1996) (stating an ALJ "may not assume doctors routinely lie in order to help their patients collect disability benefits" (quoting *Ratto v. Secretary*, 839 F.Supp. 1415, 1426 (D.Or. 1993)).  The ALJ apparently mistrusts Dr. Pollack's evaluations based on experiences outside this record, and his comments suggest he discredited Dr. Pollack's report without a fair examination of the evidence.  The validity of the ALJ's assertion cannot be assessed based on evidence in the record; therefore, the first reason for rejecting Dr. Pollack's opinion is not supported by substantial evidence in the record.

A second reason mentioned by the ALJ for rejecting Dr. Pollack's opinion is that the two marked limitations assessed stand out as "odd, out-of-place and questionable" because only mild or no limitations were assessed in every other category.  (Tr. 32.)  First, the ALJ apparently overlooked the moderate limitation assessed by Dr. Pollack in the ability to accept instructions and respond appropriately to a supervisor. (Tr. 281.)  Second, there is no basis for the ALJ's conclusion that two marked limitations are inconsistent with mild or no limitations in all other areas.  Thus, this is not a legitimate reason for rejecting Dr. Pollack's opinion.

However, the ALJ did give another reason for rejecting Dr. Pollack's report which is a specific, legitimate reason supported by substantial evidence.  The ALJ pointed out that Dr. Pollack's own narrative report undermines the limitations assessed. (Tr. 31.)  A medical opinion may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is inadequately supported.  *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Thomas*, 278 F.3d at 957. The ALJ noted that Dr. Pollack's assessment of marked limitations is undermined by his own testing which reflected exaggeration and malingering. (Tr. 31-32.)  Indeed, Dr. Pollack opined, "The results of the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -9

personality tests are problematic.  Both tests suggest that he may have been exaggerating his difficulties . . ." (Tr. 278.)  Dr. Pollack indicated that plaintiff reported psychotic symptoms during psychological testing, but never reported the symptoms to his physicians or sought treatment for them.  (Tr. 278.)  Malingering test results suggested plaintiff may not have made his best effort, and personality testing indicated plaintiff was presenting himself in an unfavorable light.  (Tr. 278-79.)  As the ALJ suggests, the marked limitations assessed by Dr. Pollack were not discussed or accounted for in light of the evidence of exaggeration or malingering.  Thus, the ALJ reasonably rejected the limitations as inconsistent with and unsupported by Dr. Pollack's objective test results and written report.

**c. Dr. McRae**

Plaintiff argues the ALJ did not provide any reasons for rejecting the opinion of Dr. McRae, a state consulting psychologist.  (Ct. Rec. 14 at 17.)  Dr. McRae completed a Psychiatric Review Technique form and a Mental Residual Functional Capacity Assessment form in November 2004.  (Tr. 203-19.)  Dr. McRae assessed three marked limitations and six moderate limitations and noted that plaintiff would be too slow at fine motor tasks, but could be productive at large motor tasks despite some decreased persistence and pace of work.  (Tr. 217-19.)  Although plaintiff alleges the ALJ did not reject Dr. McRae's opinion, the ALJ did in fact address the opinions of the state consulting sources.  (Tr. 32.)  The ALJ indicated he considered and gave appropriate weight to non-examining sources and specifically referenced Dr. McRae's opinion.  (Tr. 32.)  The ALJ stated, "While their earlier opinions may have been reasonable based on the evidence available to them at the time, additional new and material evidence or other factors convinces the undersigned that a new determination must be made in this case." (Tr. 32.)  This is particularly relevant to Dr. McRae's opinion because at the time he reviewed this case, Dr. Bailey's opinion was the only psychological assessment in the record.  As discussed above, Dr. Bailey's report did not take into account the possibility that plaintiff was exaggerating symptoms, which later objective testing revealed.  Thus, Dr. McRae's opinion was appropriately assigned less weight because later, relevant evidence undermined Dr. McRae's conclusions.  The ALJ did not overlook or fail to address Dr. McRae's opinion.  Instead, the ALJ made a reasonable interpretation of the evidence in giving less weight to

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -10

Dr. McRae's assessed limitations.

**d. Dr. Rosen**

Plaintiff argues the ALJ erred by failing to provide any reasons for rejecting Dr. Rosen's opinion. (Ct. Rec. 14 at 17.)  As noted above, Dr. Rosen saw plaintiff seven times over 13 months. (Tr. 305, 307.)  Dr. Rosen's initial assessment dated May 11, 2005 included diagnoses of rule out dementia not otherwise specified, rule out major depressive disorder, and adjustment disorder.  (Tr. 305.)  In November 2006, Dr. Rosen's narrative summary of treatment stated that her clinical diagnoses had not changed  "except that I removed the R/O [rule out] from both 294.8 []Dementia Not Other [sic] Specified and from 296.23 Major Depressive Disorder, Single Episode, Severe Without Psychotic Features."  (Tr. 307.)  Dr. Rosen also indicated plaintiff continued to present as dysfunctional and overwhelmed, with socially avoidant and paranoid tendencies, chronic insomnia, severe interpersonal conflict, and compromised cognitive abilities.  (Tr. 307.)  Although the ALJ summarized Dr. Rosen's findings, the ALJ did not reject or assign weight to the opinion.  (Tr. 26.)  The ALJ evidently misunderstood Dr. Rosen's removal of the "rule out" from the dementia diagnosis as the removal of the dementia diagnosis altogether.  The ALJ indicated, "With a major depressive disorder indicated, the previous diagnosis of dementia was ruled out."  (Tr. 26.)  The ALJ also noted, "Indeed, even the claimant's counselor, Dr. Rosen, reported at Exhibit 18F that the previous diagnosis of dementia was ruled out."  (Tr. 31.)

The ALJ mistakenly understood Dr. Rosen's diagnoses to support the ALJ's conclusions and overlooked or failed to discuss other factors suggestive of disability in  Dr. Rosen's opinion.  The ALJ did not reconcile or reject Dr. Rosen's description of plaintiff as "most dysfunctional," "explosive [with] marginal abilities to keep himself in check," "memory significantly impaired," and having "severe clinical conditions."  (Tr. 307.)   As a treating psychologist, Dr. Rosen's opinion is entitled to proper consideration by the ALJ.  The ALJ's misreading of the opinion means it was not properly considered.  Thus, the ALJ erred.

**5. Dr. Ashworth and Dr. Thompson**

Plaintiff argues the ALJ used Dr. Ashworth's report as the basis for the RFC finding, but did not take into account a low GAF score assessed by Dr. Ashworth. (Ct. Rec. 14 at 18.)  Dr. Ashworth

and Dr. Thompson co-signed an Adult Memory Assessment dated March 27, 2007, and Dr. Thompson prepared a second Adult Memory Assessment on July 30, 2008.[1]  (Tr. 328-34, 469-77.) The 2007 assessment listed diagnoses of depressive disorder and rule out personality disorder, and included a GAF score of 53 indicating moderate symptoms of depression and moderate difficulty in social and occupational functioning.  (Tr. 333.)  The doctors opined that plaintiff was capable of understanding, remembering and carrying out simple work-related instructions, and that plaintiff would have difficulty interacting in a work setting with coworkers and supervisors.  The 2008 assessment included diagnoses of depressive disorder, anxiety disorder, rule out malingering, and rule out personality disorder.  (Tr. 476.)  Dr. Thompson assessed a GAF score of 50, noting suicidal ideation, serious impairment in social and occupational functioning and symptoms of depression and anxiety.  (Tr. 476.)  Dr. Thompson indicated that plaintiff appeared able to sustain gainful employment, and to understand, remember and carry out simple work related instructions.  (Tr. 477.) Dr. Thompson noted that plaintiff would not have difficulty interacting in a work setting with coworkers and supervisors unless he chose to have problems.  (Tr. 477.)  Although the ALJ did not specifically assign weight to the opinions of Drs. Ashworth and Thompson, the ALJ discussed the opinions favorably in support of the RFC finding.  (Tr. 31.)

Plaintiff argues that the ALJ adopted the limitations assessed by Drs. Ashworth and Thompson, but did not take into account the GAF score of 50 assessed by Dr. Thompson.  (Ct. Rec. 14 at 18.)   The Commissioner has explicitly disavowed use of GAF scores as indicators of disability. "The GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorder listing."  65 Fed. Reg. 50746-01, 50765 (August 21, 2000).  Furthermore, if the GAF score of 50 is inconsistent with the limitations assessed by Drs. Ashworth and Thompson, it is the ALJ's duty to resolve the conflict in medical evidence.  *See Morgan v. Commissioner*, 169 F.3d 595, 599-600 (9th Cir. 1999); *see also Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  The ALJ

---

[1] Plaintiff references a 2008 evaluation completed by Dr. Ashworth.  (Ct. Rec. 14 at 18.) Presumably, plaintiff was referring to the 2008 assessment prepared by Dr. Thompson as there is no 2008 evaluation signed by Dr. Ashworth in the record.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -12

reasonably did so by giving weight to the specific limitations identified by Dr. Ashworth and Dr. Thompson.  Lastly, the ALJ's mental RFC finding was supported by other evidence, including the opinion of the medical expert.  (Tr. 509-12.)   Thus, the ALJ's consideration of the opinions of Dr. Ashworth and Dr. Thompson was sufficient, and the ALJ did not err.

**2.    Medical Opinion**

Plaintiff asserts the ALJ erred by rejecting the opinion of Dr. Shannon, plaintiff's treating physician.  (Ct. Rec. 14 at 19.)   In June 2007, Dr. Shannon opined that plaintiff was a "significant candidate for chronic disability" and noted, "All his physical type of work that he did before he is unable to do at all right now, primarily because of his back, legs and feet." (Tr. 354.)  In September 2007, Dr. Shannon wrote, "I have a hard time believing that someone with his significant amounts [sic] of medical issues and problems would not be a candidate for SSI . . . ." (Tr. 445.)     In disability cases, physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).   "'The administrative law judge is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, but he cannot reject them without presenting clear and convincing reasons for doing so.' " *Matthews v. Shalala*, 10 F.3d 678, 690  (9th Cir.1993) (quoting *Montijo v. Secretary of Health & Human Servs.*, 729 F.2d 599, 601 (9th Cir.1984)).  A treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Thus, the reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion.  *Reddick*, 157 F.3d at 725.  Dr. Shannon's opinion was contradicted by the medical expert, Dr. Craig, who opined that plaintiff could do sedentary work.  (Tr. 578.)  Thus, the ALJ was required to provide specific, legitimate reasons supported by substantial evidence in rejecting Dr. Shannon's opinion.

The ALJ did not specifically reject or accept the opinion of plaintiff's treating physician.  In summarizing the medical evidence, the ALJ listed Dr. Shannon's findings and  noted that in June 2007, Dr. Shannon opined plaintiff was unable to work. (Tr. 26, 354.)  The ALJ also referenced a September 14, 2007 letter in which Dr. Shannon indicated that plaintiff's medical issue and problems

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -13

limited his ability to exercise very much.  (Tr. 27, 430.)  In discussing the medical opinion evidence, the ALJ mentioned Dr. Shannon only briefly, noting, "Treating physician Dr. Shannon reported [on September 14, 2007] that the claimant's medical problems limited his ability to exercise very much, which is an improvement over his opinion [in June 2007] where he stated the claimant was unable to work."  (Tr. 31.)  However,  the ALJ did not mention Dr. Shannon's September 14, 2007 office visit notes, made the same day he wrote the letter mentioning limited ability to exercise, which indicated that Dr. Shannon had a hard time believing someone with plaintiff's medical issues would not qualify for SSI.  (Tr. 445.)

The ALJ's treatment of Dr. Shannon's opinion is unclear.  If the ALJ intended to reject Dr. Shannon's June 2007 opinion that plaintiff could not work because it was inconsistent with his September 2007 letter indicating plaintiff was limited in his ability to exercise, the ALJ erred.  A limited ability to exercise is not inconsistent with disability, and in some cases may support disability.  Furthermore, based on Dr. Shannon's September 2007 office visit note, Dr. Shannon continued to believe that plaintiff could not work, consistent with his June 2007 opinion.  If the ALJ intended to reject the opinion, he did not cite specific, legitimate reasons supported by substantial evidence.  If the ALJ accepted Dr. Shannon's opinion because the "improvement" mentioned by the ALJ suggested an improvement in plaintiff's condition, the ALJ also erred.  Dr. Shannon's opinion of plaintiff's condition did not "improve" or substantially change between June 2007 and September 2007.  Indeed, nothing in Dr. Shannon's records suggests any change in his opinion that plaintiff was disabled.    Thus, the ALJ erred by failing to adequately address Dr. Shannon's opinion.

Defendant argues Dr. Shannon's opinion of disability is inconsequential to the ultimate nondisability determination.  (Ct. Rec. 16 at 10.)  Defendant points to 20 C.F.R. § 416.927(e), which indicates that a medical source opinion of disability is an issue reserved to the Commissioner and is not entitled to controlling weight or special significance.  Similarly, S.S.R. 96-5p provides that a determination of disability is an administrative finding that directs disposition of a case, not a statement of the nature and severity of claimant's impairments entitled to special significance.  However, S.S.R. 96-5p also states "adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues reserved to the Commissioner," and

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -14

"opinions from any medical source on issues reserved to the Commissioner must never be ignored." Dr. Shannon was the only physician in the record who saw plaintiff relatively regularly over a long period of time. He was the physician with the best overall picture of plaintiff's conditions, and had the best opportunity to know and observe plaintiff. *See Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987) (treating physician entitled to deference because "he is employed to cure and has greater opportunity to know and observe the patient as an individual"). As discussed above, an opinion from a medical source regarding disability may be rejected with specific, legitimate reasons supported by substantial evidence. *See Reddick,* 175 F.3 at 725. The ALJ's only analytic statement regarding Dr. Shannon's opinion is erroneous, and that error means the treating physician's actual opinion was not considered by the ALJ. As such, remand is necessary to allow the ALJ to review Dr. Shannon's opinion correctly and make additional findings either accepting or rejecting the opinion.

Plaintiff argues Dr. Shannon's opinion should be credited. There are two remedies where the ALJ fails to provide adequate reasons for rejecting the opinions of a treating or examining physician. The general rule, found in the *Lester* line of cases, is that "we credit that opinion as a matter of law." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989). Another approach is found in *McAllister v. Sullivan*, 888 F.2d 599 (9th Cir. 1989), which holds a court may remand to allow the ALJ to provide the requisite specific and legitimate reasons for disregarding the opinion. *See also Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (court has flexibility in crediting testimony if substantial questions remain as to claimant's credibility and other issues). Where evidence has been identified that may be a basis for a finding, but the findings are not articulated, remand is the proper disposition. *Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990) (citing *McAllister*); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1202 (9th Cir. 1990). In this case, the ALJ made an error in reading the opinion of Dr. Shannon, a treating physician. For this reason, remand is the appropriate remedy.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -15

**CONCLUSION**

The ALJ's decision is not supported by substantial evidence and free of legal error.  A remand is appropriate to allow the ALJ to reconsider the medical and psychological opinions.  On remand, the ALJ will weigh and analyze the opinions of Dr. Rosen and Dr. Shannon and make new findings as are appropriate.

Accordingly,

**IT IS ORDERED:**

1.    Plaintiff's Motion for Summary Judgment **(Ct. Rec. 13)** is **GRANTED**.  The matter is remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. 405(g).

2.    Defendant's Motion for Summary Judgment **(Ct. Rec. 15 )** is **DENIED**.

3.    An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant. Judgment shall be entered for plaintiff and the file shall be **CLOSED**.

DATED March 23, 2010.


S/ JAMES P. HUTTON
_____UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT -16